

AO 91 (Rev. 11/11) Criminal Complaint

FILED TD
4/24/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Hayley Altabef (312) 353-5357

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ANTWAN LAWRENCE

CASE NUMBER: 1:26-cr-00187

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about March 13, 2026, at Oak Forest, in the Northern District of Illinois, Eastern Division, and elsewhere, , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| Title 21, United States Code, Section 841(a)(1) | Did knowingly and intentionally distribute a controlled substance, namely, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

JERREMY MCFADDEN
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: April 24, 2026

*Judge's signature*

City and state: Chicago, Illinois

BETH W. JANTZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, JERREMY MCFADDEN, being duly sworn, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been employed by the ATF since April 2021. I was previously employed as a Police Officer with the City of Portage Police Department, Indiana for over thirteen years. As part of my duties, I investigate federal criminal violations related to firearms trafficking, narcotic trafficking, criminal groups or organizations, violent crime related to narcotics trafficking and distribution, and violent crime related to violations of firearm statutes, up to and including homicide.

2. I received approximately twenty-six weeks of criminal investigative training from the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia and graduated from the Criminal Investigator Training Program (CITP) and ATF Special Agent Training (SABT). While at FLETC, I participated in investigations that included the use of confidential sources and undercover officers, physical surveillance, electronic surveillance, and the execution of search and arrest warrants on both physical and digital environments, including the use of court-ordered intercepts of wire and/or electronic communications, dialed number recorders (pen registers), telephone toll analysis, arrests of drug traffickers, and the analysis of seized records, physical evidence, and taped conversations. These investigations have involved one, or all, of the following crimes: possession, distribution, possession with

intent to distribute, and manufacture of controlled substances, and related laundering of monetary instruments. I have also spoken with confidential informants who have extensive knowledge of the inner workings of major narcotics trafficking organizations. Through these investigations and training, I am familiar with the operations of drug trafficking organizations in the United States. In addition, through my investigations, training, and experience, and my conversations with other law enforcement personnel, I have become familiar with some of the tactics and methods used by narcotic traffickers to smuggle and safeguard narcotics, and to manufacture and distribute narcotics.

3. This affidavit is submitted in support of a criminal complaint alleging that ANTWAN LAWRENCE ("LAWRENCE") has violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging LAWRENCE with distribution of a controlled substance, namely, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, interviews of a confidential source, review of consensual recordings, and physical surveillance.

5.      The investigation to date has included the use of consensually recorded telephone and in-person conversations. The summaries of recorded conversations in this affidavit do not include reference to all of the topics covered during the conversations. Quoted material from the recorded conversations as set forth in this affidavit is taken from draft summaries, not final transcripts. In certain instances, conversations are summarized and placed in context, and my interpretations of the conversations are included in brackets. My understanding and interpretation of these conversations is based upon by the contents and context of the conversations, my familiarity with the facts and circumstances of this investigation, my experience as a law enforcement officer, my discussions with other law enforcement officers, the experience of other law enforcement agents and officers in this investigation, and other evidence developed during the course of the investigation.

## FACTS IN SUPPORT OF PROBABLE CAUSE

### *Summary of Investigation*

6.      Since approximately March 2026, law enforcement officials, including Kankakee Area Metropolitan Enforcement Group (KAMEG) and the ATF, have been investigating LAWRENCE, also known as "Lo."

7.      In or around March 2026, a confidential law enforcement source ("CS-1")[1] told law enforcement that LAWRENCE, who CS-1 knew as "Lo," was distributing

---

[1] CS-1 began working as a cooperating source for KAMEG on approximately February 24, 2026 and has provided information regarding this investigation and others to law enforcement officials. CS-1 has 14 previous arrests for assault, burglary, larceny, damage to property, dangerous drugs, obstructing, traffic offenses and has 11 convictions for assault (3 convictions), burglary (3 convictions), larceny (2 convictions), dangerous drugs, and traffic offenses. The information provided by CS-1 related to this investigation has been

3

large quantities of methamphetamine in Kankakee County. Subsequently, on or about March 12, 2026, at the direction of law enforcement, CS-1 contacted LAWRENCE to arrange a controlled narcotics purchase.

### *March 13, 2026, Controlled Purchase of Methamphetamine*

8.      On or about March 13, 2026, CS-1 and LAWRENCE spoke by phone and agreed to meet at a location in Kankakee so CS-1 could purchase approximately a half-pound of methamphetamine from LAWRENCE.[2]

9.      On March 13, 2026, at approximately 2:52 p.m., law enforcement met with CS-1 at a predetermined meeting location. Law enforcement searched CS-1 and CS-1's vehicle ("CS-1's Vehicle") for contraband. Law enforcement found approximately $2.00 on CS-1's person, and law enforcement held the funds and returned them to CS-1 after the controlled purchase. Law enforcement did not find any contraband or excess cash in CS-1's Vehicle. Law enforcement then equipped CS-1's Vehicle with audio and video recording and transmitting devices and gave CS-1 $1,600 in pre-recorded buy funds for the anticipated transaction.

---

corroborated through surveillance and consensually-recorded deal conversations as described in this Affidavit. Based on law enforcement dealings with CS-1, which include 4 other undercover narcotic purchases, and the information provided in this Affidavit, I consider CS-1 to be credible and believe that the information provided by CS-1 is reliable. CS-1 is cooperating with law enforcement in exchange for charging consideration arising out of an arrest for distributing a controlled substance, and CS-1 has been reimbursed for the cost of CS-1's gasoline and incidentals to assist in law enforcement's investigations.

[2] This interaction was not recorded but CS-1 later relayed the content of the conversation to law enforcement.

10.     Law enforcement maintained constant surveillance on CS-1's Vehicle. At approximately 3:10 p.m., law enforcement observed LAWRENCE[3] enter the passenger side of CS-1's Vehicle. Inside CS-1's Vehicle, according to CS-1 and as reflected on the audio and visual recording from CS-1's Vehicle, LAWRENCE said he did not have any methamphetamine on his person, and that they would need to travel up north to near Lincoln Highway to purchase the methamphetamine from a supplier. As observed by law enforcement, CS-1's Vehicle drove to Interstate 57 and continued northbound to the destination directed by LAWRENCE. As reflected in the audio and visual recording from CS-1's Vehicle, during the drive, LAWRENCE told CS-1 that the transaction would occur in Oak Forest, Illinois.

11.     As observed by law enforcement, starting at approximately 3:58 p.m., CS-1's Vehicle stopped at a Shell Gas Station in Country Club Hills and then a Wendy's drive-through in Oak Forest. During those stops, CS-1 spent approximately $60 of the pre-recorded buy funds.

12.     At approximately 4:08 p.m., as observed by law enforcement, CS-1's Vehicle pulled into the parking lot of a Dunkin Donuts on the 4100 block of 167th Street in Oak Forest. According to CS-1 and as reflected in the audio and visual recording from CS-1's Vehicle, CS-1 pulled into the parking lot at LAWRENCE's request.

---

[3] The identification of LAWRENCE is based on, among other things, the following: CS-1 positively identified LAWRENCE as "Lo," a known nickname, and LAWRENCE's identity was confirmed through prior in-person law enforcement encounters with LAWRENCE.

13. Also at approximately 4:08 p.m., LAWRENCE exited CS-1's Vehicle and entered a black Chrysler Town & Country vehicle driven by an unidentified male (the "Chrysler"). Law enforcement observed LAWRENCE enter the passenger side of the Chrysler. Approximately two minutes later, law enforcement observed LAWRENCE return to and enter CS-1's Vehicle. Once inside CS-1's vehicle, as seen on the audio and visual recording from CS-1's Vehicle, LAWRENCE handed CS-1 a large clear bag containing a white/clear crystallized substance containing suspect methamphetamine. LAWRENCE requested from CS-1 $1,540 in exchange for the substance, and CS-1 gave LAWRENCE $1,540 in pre-recorded funds.

14. At approximately 4:10 p.m., LAWRENCE exited the CS-1's Vehicle and re-entered the Chrysler. Based on my training and experience, the training and experience of my colleagues, and the investigation to date, I believe LAWRENCE provided the unknown male in the Chrysler all or part of the $1,540 in pre-recorded funds CS-1 gave LAWRENCE for the purchase of methamphetamine.

15. At approximately 4:12 p.m., law enforcement observed LAWRENCE re-enter CS-I's Vehicle, and CS-1's Vehicle departed the area.

16. At approximately 4:15 p.m., CS-1's Vehicle entered onto Interstate-57 and began traveling southbound. Law enforcement maintained constant and uninterrupted surveillance during CS-1's Vehicle's transit back towards Kankakee County. CS-1's Vehicle exited Interstate-57 at the 308 Kankakee (Illinois Route 45/52) exit ramp.

17.     At approximately 4:53 p.m., CS-1's Vehicle arrived in Kankakee. Law enforcement observed LAWRENCE exit CS-1's Vehicle and get into the driver's seat of a silver GMC Savana 1500 with Illinois registration DV46597.[4] LAWRENCE then departed the area.

18.     At approximately 4:58 p.m., CS-1 arrived back at the predetermined meeting location under law enforcement surveillance.  Law enforcement conducted a second search of CS-1's Vehicle and CS-1's person, finding no contraband.  CS-1 provided agents with the large clear bag containing a white/clear crystallized substance suspected to be methamphetamine. Law enforcement also provided CS-1 the  $2.00 taken from CS-1 before the narcotics transaction.

19.     The bag containing the methamphetamine that LAWRENCE distributed to CS-1 field tested positive for the presence of methamphetamine and weighed approximately 221.30 grams, including packaging. Law enforcement officials submitted the substance to the DEA Laboratory, and the results are pending.

**CONCLUSION**

20.     Based on the foregoing, I respectfully submit that there is probable cause to believe that on or about March 13, 2026, at Oak Forest, in the Northern District of Illinois, Eastern Division, ANTWAN LAWRENCE did knowingly and intentionally distribute a controlled substance, namely, 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a

---

[4] The vehicle is registered to Individual A, who resides on the 100 block of North Van Buren Avenue in Bradley, Illinois, and is believed to be a relative of LAWRENCE.

Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

JERREMY MCFADDEN
Special Agent, Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO AND AFFIRMED by telephone April 24, 2026.

Honorable BETH W. JANTZ
United States Magistrate Judge

8